**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **LEONARD WILLIAMS, # R-05138,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-1296-SMY** |
| | ) | |
| **MS. ARMSTRONG,** | ) | |
| **MS. McVEY,** | ) | |
| **DENSMORE,** | ) | |
| **OFFICER WEBB,** | ) | |
| **OFFICER LEWIS,** | ) | |
| **and JOHN DOE (Chief Admin. Officer),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Leonard Williams, currently incarcerated at Jacksonville Correctional Center ("Jacksonville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose while he was incarcerated at Lawrence Correctional Center ("Lawrence").  Plaintiff claims that Defendants were deliberately indifferent to his serious medical condition, causing him injury, and that he was subjected to retaliation by Defendant Armstrong and McVey.  Plaintiff's Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**The Complaint**

In December 2014, Plaintiff Williams was assigned to a prison job in the dietary department, where he was supervised by Ms. Armstrong.  (Doc. 1, p. 7).  Williams had previously suffered a tear in his right rotator cuff, for which he underwent 2 years of physical therapy.  He also had back problems.  Due to these conditions, Williams was unable to perform regular activities of daily living without pain.  He informed Armstrong that because of his medical problems, he could not pick up the 100-pound dining tables or the full garbage cans (also weighing over 100 pounds), which were part of his job duties.  On January 2, 2015, Armstrong responded by telling Williams that she would make sure his "lazy ass" picked up the tables and garbage cans, or else he would get a disciplinary ticket for disobeying a direct order. (Doc. 1, p. 8).  Faced with this threat, Williams struggled to lift the heavy tables and cans while he screamed in pain.  Armstrong witnessed this, and told Williams that if he did not stop faking, she would write him a disciplinary ticket.  *Id.*

On January 3, 2015, Williams showed Armstrong his medical records documenting his right shoulder injury and treatment.  She stated that she didn't give a "f**k" about medical records, and that this was Williams's job assignment.  *Id.* Williams continued to do the work, enduring much pain to his injured shoulder.  Armstrong dismissed Williams early from his shift on January 19, 2015 because he could not lift the garbage cans.  Williams wrote an emergency grievance, but the John Doe Warden denied it and deemed the matter a non-emergency.  (Doc. 1-3, pp. 1-2).

Williams saw the prison doctor about his shoulder condition on January 29, 2015.  The next day at work, Armstrong again demanded that Williams pick up the tables.  He told her he could not lift them and had just seen the doctor about his shoulder injury, which had become

3

worse due to his heavy lifting.  Armstrong again threatened Williams with a ticket if he did not follow orders.  Williams needed to avoid incurring a ticket, because it would thwart his planned transfer to another prison.  He proceeded to pick up two tables with help from other workers, but when he lifted the third table, his shoulder gave out.  The table came down hard on Williams' rib cage, causing severe pain in his ribs and shoulder.

An officer took Williams to health care.  (Doc. 1, pp. 8-9).  A nurse gave Williams a medical lay-in permit until his doctor's appointment on February 3 for an x-ray.  However, the next day (January 31), Williams was called out to work by Officer Webb.  Williams showed his medical permit to Webb, explaining that he was not supposed to work.  Webb ignored the information, stating that he did not have a copy of the permit, and told Williams that if he did not go to work, he would get a ticket.  (Doc. 1, p. 9).  Williams went to the dietary department and told Armstrong about the medical lay-in.  She told him to either work or get a ticket, so Williams went to work, suffering pain every time he picked up the heavy tables and cans.  (Doc. 1, p. 10).

Over the next 3 days, the same thing happened – Williams showed his medical permit to Officer Lewis on February 1, to an unidentified officer[1] on February 2 and to Webb again on February 3.  Each officer, as well as Armstrong, ignored the permit and Williams had no choice but to work in pain in order to avoid disciplinary action.

Williams learned from the prison doctor on February 5, 2015 that his rib was not fractured, but was extremely bruised.  The doctor issued Williams another medical permit, this time to exempt him from any heavy lifting, and prescribed physical therapy for the injured shoulder.

---

[1] Plaintiff refers to this officer as a "John Doe" in the body of the Complaint, but he does not include this individual among the named Defendants.  He clearly identifies the single John Doe Defendant named in the Complaint as the Chief Administrative Officer of the prison.  (Doc. 1, pp. 1, 2).

On February 6, 2015, Williams reported to Armstrong for work and gave her the new medical permit.  Armstrong escorted Williams to Supervisor McVey who told him to "stop bring[ing] this medical s**t over here to the dietary."  (Doc. 1, p. 11).  Williams explained that Armstrong told him to get a doctor's permit, but McVey responded, "I don't give a f**k, stop bring[ing] it over here."  *Id.*  McVey then accused Williams of trying to threaten and intimidate Armstrong with the grievance he wrote.  She told him that wouldn't work, and she (McVey) could write reports too.  They sent Williams back early to his housing unit.

Williams soon received a disciplinary ticket authored by McVey, stating that he brought in an envelope with medical information and complained about his job duties.  The ticket falsely stated that Williams had come from the law library to dietary.  Williams asserts that the ticket was issued solely as retaliation for the grievance he wrote against Armstrong for making him lift heavy items after he told her about his medical problems.  (Doc. 1, p. 11).

Based on these facts, Williams asserts a deliberate indifference claim against Armstrong, McVey, Densmore (the Head Dietary Supervisor), Webb, Lewis and the John Doe Warden. (Doc. 1, p. 12).  He brings a retaliation claim against Armstrong and McVey (Doc. 1, p. 14) and seeks monetary damages.  (Doc. 1, p. 15).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment claim against Defendants Armstrong, McVey, Densmore, Webb, Lewis, and the John Doe Warden, for deliberate indifference to Williams's serious shoulder injury, in that they required Williams to perform job duties that caused him significant pain and further injury to the shoulder, as well as a new injury to his ribs;

**Count 2:** First Amendment retaliation claim against Armstrong and McVey, for issuing Williams an unjustified and false disciplinary ticket after he filed a grievance against Armstrong for requiring him to perform work that caused him pain.

Both counts shall proceed for further review, but some of the defendants shall be dismissed where the Complaint does not articulate a cognizable claim against them.

### Count 1 – Deliberate Indifference to Serious Medical Condition

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

Claims under the Eight Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302

(1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities.  *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component focuses on the state of mind of the defendant.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, this is deliberate indifference to inmate health or safety.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).

The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions.  *Farmer*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  However, mere negligence is not enough.  *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In Williams' case, his impaired and injured shoulder, for which he had received extensive medical treatment before his work assignment to the dietary department, was an objectively serious medical condition.  Furthermore, he informed several of the defendants of this condition and the risk that he could suffer pain and another injury if he were to lift heavy objects.  The remaining question then, is whether the individual defendants were deliberately indifferent to the risk of injury to Williams from being required to lift heavy objects in the course of his prison job.

Williams details several instances when Armstrong disregarded his medical information

and doctor-issued medical permits and ordered him to move the tables and trash cans, despite his obvious pain and his warning that this activity would aggravate his shoulder injury. She forced him to choose between risking injury and pain by performing the work, or incurring a disciplinary ticket if he refused. For screening purposes, Williams has stated a claim against Armstrong for deliberate indifference to his serious medical condition. Accordingly, Count 1 shall proceed against her for further consideration.

Williams also names McVey and Densmore (Dietary Supervisors) in connection with his deliberate indifference claim. However, Williams' factual narrative does not describe any involvement by these defendants during the period that Armstrong required Williams to work and risk injury. Williams did not have an encounter with McVey until he brought in the medical permit that exempted him from heavy lifting. At that point, he was sent away from the dietary unit instead of being ordered to return to work. These facts do not indicate that McVey placed Williams in a position where he faced a risk of harm to his shoulder. As for Densmore, Williams does not mention him in the statement of facts and does not describe any conduct on his part at all. For these reasons, McVey and Densmore shall be dismissed from Count 1 without prejudice.

Webb and Lewis both required Williams to report to his job, despite being shown Williams's medical lay-in permit. That permit was issued to give Williams a break from work while he waited for medical attention for his shoulder and rib injuries. Webb and Lewis' disregard of the doctor's permit could amount to deliberate indifference to Williams' medical condition. Therefore, Count 1 may proceed against these two defendants.

Finally, the John Doe Warden/Chief Administrative Officer shall be dismissed from this claim. Williams' only allegation against him is that he denied the emergency grievance Williams filed after Armstrong dismissed him from work on January 19, 2015. But a prison

official who denies a prisoner's grievance does not become liable for the constitutional violation that prompted the inmate to file the grievance.  The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  Williams does not allege that the John Doe Warden was involved in ordering him to continue working in the dietary department.  His only connection to the incident was to review Williams' grievance filed after the fact to complain about Armstrong's conduct.  As such, the John Doe Warden's alleged improper handling or denial of Williams's grievance does not support an independent constitutional claim.

To summarize, the deliberate indifference claim stated in **Count 1** shall proceed only against Armstrong, Webb and Lewis.  McVey, Densmore and the John Doe Warden shall be dismissed from this claim without prejudice.

### Count 2 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  To state a claim for retaliation, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the grievance or suit and the act of retaliation is all that is required.  *Id.*  A complaint that provides a short, clear statement

of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim. *Id.*

In the present case, Williams filed a grievance to complain about Armstrong requiring him to perform tasks that placed his health at risk. When he presented his medical permit to Armstrong and McVey, McVey accused him of trying to intimidate Armstrong by filing a complaint against her. She then told Williams that she "could write reports too." Following that comment, McVey issued a disciplinary ticket against Williams for complaining about his job and bringing medical information.

When a prisoner alleges that he was subjected to retaliatory discipline, he "must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient")). In the absence of such a chronology, a claim of retaliatory discipline may be subject to dismissal. *Cain*, 857 F.2d at 1143 n.6.

Here, Williams' factual summary lays out a plausible claim that Armstrong and McVey issued his disciplinary ticket in order to retaliate against him for filing the grievance against Armstrong. The Complaint suggests that Williams experienced an adverse action that would likely deter First Amendment activity in the future, and that his First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). As such, the retaliation claim against Armstrong and McVey in **Count 2** survives § 1915A review and shall proceed for further consideration.

## False Statement Regarding Litigation History

In this Court's standard complaint form, a plaintiff is directed to list any previous lawsuits s/he has brought relating to their imprisonment. The Court relies on this information in order to adhere to the 3-strike restriction in 28 U.S.C. § 1915(g). Williams employed this form to prepare his Complaint in this action. In the "Previous Lawsuits" section, he listed all 4 of his previous actions and affirmatively stated, "no strike have [sic] been issued against me in any action I have filed." (Doc. 1, p. 3). However, contrary to Williams' assertion, he did incur a strike (his only one) in a prior case filed in this Court: *Williams v. Martin*, Case No. 14-cv-105-MJR (dismissed May 14, 2014).

False statements in a pleading or motion filed with a court are subject to sanctions. *See* Fed. R. Civ. P. 11(b)(3) and (c). Where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to the Court. *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where Court-issued complaint form clearly warned plaintiff that failure to provide litigation history would result in dismissal).

At this juncture, because Williams has only one strike and is not subject to the filing restriction in § 1915(g), the Court concludes that sanctions are not warranted. However, Williams is **WARNED** that if he submits any pleading or motion in this or another action that contains a false statement of fact with reference to his litigation history, or if he omits his litigation history, the Court may strike that document from the record and/or impose other sanctions as appropriate.

## Disposition

Defendants **DENSMORE** and **JOHN DOE (Chief Administrative Officer)** are

**DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **ARMSTRONG, McVEY, WEBB,** and **LEWIS**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 13, 2017**

s/ STACI M. YANDLE
United States District Judge

13